# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | 8:15CR318 |
| Plaintiff, | ) | |
| | ) | FINDINGS AND |
| v. | ) | RECOMMENDATION |
| | ) | |
| JUAN ALATORRE, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on the Motion to Suppress Evidence (Filing No. 20) filed by defendant Juan Alatorre (Alatorre). Alatorre is charged in the Indictment with possessing a firearm after having been convicted of a felony in violation of 18 U.S.C. § 922(g)(9). Alatorre seeks to suppress evidence seized from his residence following the execution of a search warrant by officers of the Omaha Police Department (OPD) on November 26, 2014.

The court held a hearing on the motion on January 19, 2016. Alatorre was present with his counsel, Assistant Federal Public Defender Karen M. Shanahan. The United States was represented by Assistant U.S. Attorney Thomas J. Kangior. The court heard the testimony of Deputy U.S. Marshals John Huggins (Deputy Huggins) and Mark Anderson (Deputy Anderson) and OPD Officer Susan Rupp (Officer Rupp). The court received into evidence an Affidavit and Application for the Issuance of a Search Warrant, Search Warrant, and Return and Inventory (Exhibit 1). A transcript (TR.) of the hearing was prepared and filed on January 27, 2016 (Filing No. 32).

## FINDINGS OF FACT

On November 26, 2014, officers of the Metro Area Fugitive Task Force (MAFTF) were executing fugitive arrest warrants in the Omaha area (TR. 3). One of the warrants was for Alatorre (TR. 3). Prior to caravanning to the arrest location, eight officers of the MAFTF received a pre-arrest briefing by Officer Rupp concerning Alatorre and the arrest warrant (TR. 55). Officer Rupp, the case officer, explained the arrest warrant was for an assault with a weapon, a baton (TR. 55).

During the briefing Officer Rupp provided Alatorre's photograph, description, address, vehicle use, and prior arrest history involving guns and violence (TR. 4, 36-37, 55-56). Around 6:15 a.m, approximately eight MAFTF officers arrived at a duplex in South Omaha where Alatorre was known to reside (TR. 19).

Deputy Huggins, wearing a U.S. Marshal lettered tactical vest and equipped with a two-by-four foot ballistic shield marked "POLICE" with a view port, took the lead position (TR. 4). Deputy Huggins utilizes the ballistic shield in high-risk operations where there is a history of gun violence, concealed weapons or gang activity (TR. 4-5). Deputy Huggins, carrying a ballistic shield, and several of the other MAFTF officers walked to the front door (TR. 7). The officer behind Deputy Huggins knocked on the front door without announcing anything (TR. 7). MAFTF officers heard and saw movement inside through slats in the front door window blinds (TR. 7-8). The officers knocked on the door again and Deputy Huggins announced "Police with a warrant. Come to your door." (TR. 9). The officers knocked several more times (TR. 9). After a short interval Alatorre came to the door and opened it (TR. 9). An officer behind Deputy Huggins pulled Alatorre from the doorway onto the porch stoop and placed Alatorre in handcuffs (TR.10, 40). Deputy Huggins asked if there was anyone else inside, whereupon Alatorre said, "my girlfriend" (TR. 11). Deputy Huggins shouted, "anyone else inside, come to the door" (TR.11). Deputy Huggins saw the girlfriend come out of the kitchen, called her to the door, and she was pulled outside on the porch stoop (TR. 12). She told Deputy Huggins there was no one else inside (TR. 12).

Because of the noise of movement, seeing movement through the blinds, and the hesitancy of the occupants to come out, Deputy Huggins testified he had no way to be sure there was no one else inside except to check for himself (TR. 13). Officer Huggins entered the residence to conduct a protective sweep to see if there was anyone else inside who could harm the arresting officers (TR. 14). Deputy Anderson was directly behind Deputy Huggins during the sweep (TR. 14). Officer Rupp followed behind Deputy Anderson (TR. 58). The residence was a small apartment and when Deputy Huggins entered the front living room area, he noted two closed doors on his left and an opening to the kitchen area on his right (TR. 14). Deputies Huggins and Anderson opened the doors to the two closed

2

rooms and checked wherever a person could hide but did not find anybody (TR. 14-15). When those rooms were cleared, the deputies cleared the kitchen area (TR. 15). During the protective sweep of the residence for threats, Deputies Huggins and Anderson noted two guns sitting on a shelf near the kitchen area and in front of the guns was observed what Deputy Huggins described as a "shrine" to drugs consisting of a "joint" of marijuana, a line of white powder, a bag of mushrooms, and some other drug paraphernalia (TR. 15, 43). Officer Rupp noted a baton sitting next to a buffet table (TR. 59). Finding no one inside, Deputies Huggins and Anderson left the residence and relayed what they saw inside to another officer (TR. 18-19). The sweep lasted about two minutes and the officers checked only places in the residence where persons could be hiding (TR. 14-15, 72). During this MAFTF operation, a perimeter of the residence was established where officers were in the rear of the residence to insure no one escaped out of the rear of the residence (TR. 31).

The information about what was observed during the protective sweep was later placed in an Application and Affidavit For Issuance of a Search Warrant for the residence (Exhibit 1; TR. 60). The items noticed during the protective sweep along with other items were seized pursuant to the Search Warrant (Exhibit 1; TR. 60).

Alatorre asserts that the protective sweep of the residence was unwarranted and unnecessary and the observations of the entering MAFTF officers and the items seized during the execution of the search warrant should be suppressed. Alatorre does not dispute the MAFTF had a valid arrest warrant for Alatorre and the duplex in question was his residence. Alatorre asserts since he was removed from the residence and his girlfriend came out of the residence and both were detained, there was no legal basis for the MAFTF officers to enter the residence. A protective sweep is a permissible limited warrantless search of a premises conducted to protect the safety of officers making an arrest **Maryland v. Baie**, 494 U.S. 325, 337 (1990). The Supreme Court defined a protective sweep as a search

> to assure themselves that a house in which a suspect is being or has just been arrested is not harboring other persons who are dangerous and who are dangerous and who could unexpectedly launch an attack. The risk of danger in the

3

> context of an arrest in a home is as great as, if not greater than, it is in on-the-street or roadside investigatory encounter . . . . Moreover, unlike an encounter on the street or along a highway, an in-home arrest puts the officer at the disadvantage of being on his adversary's "turf." An ambush in a confined setting of unknown configuration is more to be feared than it is in open, more familiar surroundings.

*Baie*, 494 U.S. at 333. Such a sweep is justified when there is a question by officers of how many persons are present and a quick sweep is limited to places where persons can be hiding. *United States v. Boyd*, 180 F.3d 967, 976 (8th. Cir. 1999).

Alatorre argues since he was, in effect, arrested outside on the porch stoop when he was pulled out of the residence and his girlfriend came outside to the porch stoop when directed, there was no urgency for the MAFTF officers to enter the residence. Reported cases are plentiful where protective sweeps are justified when arrests take place outside of a residence. *United States v. Cavalla*, 318 F.3d 987 (10th Cir. 2003); *United States v. Ruiz*, 257 F.3d 1030 (9th Cir. 2001); *United States v. Hobos*, 892 F.2d 1387 (9th Cir. 1989); *United States v. Arch*, 7 F.3d 1300 (7th Cir. 1993). Further, the facts before the court establish there was no pretextual basis the MAFTF officers were searching for evidence during the sweep rather than simply executing an arrest warrant and ensuring the safety of the MAFTF officers.

The MAFTF officers heard movement in the residence and observed movement through the front door blind slats when they approached the front door and knocked. Even though Alatorre and his girlfriend were outside the residence, the officers were concerned for their safety because there may be other persons hiding in the residence based on the nature of the arrest warrant and Alatorre's criminal history. As stated in *United States v. Williams*, 577 F.3d 878 (8th Cir. 2009):

> [W]hile hindsight reveals that the officers had already encountered all of the occupants of the home before conducting the protective sweep, that information was not apparent to the officers when they initiated the sweep.

*Williams*, 577 F.3d at 880.

The court finds the protective sweep conducted by the MAFTF officers at Alatorre's residence on November 26, 2014, to be completely justified. The observations by MAFTF

officers during the sweep were not made to discover evidence but noted contraband in plain view while searching for persons hiding within the residence. Consequently, the observations noted and placed in the search warrant application and affidavit were lawful and do not warrant the suppression of evidence found during the execution of the search warrant. Alatorre's motion to suppress should be denied.

**IT IS RECOMMENDED TO CHIEF JUDGE LAURIE SMITH CAMP that:**

Juan Alatorre's Motion to Suppress Evidence (Filing No. 20) be denied.

## ADMONITION

Pursuant to NECrimR 59.2 any objection to this Findings and Recommendation shall be filed with the Clerk of the Court within fourteen (14) days after being served with a copy of this Findings and Recommendation. Failure to timely object may constitute a waiver of any such objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

DATED this 7th day of March, 2016.

BY THE COURT:

s/ Thomas D. Thalken
United States Magistrate Judge