# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | 8:15CR318 |
| vs. | |
| JUAN ALATORRE, | MEMORANDUM AND ORDER |
| Defendant. | |

This matter is before the Court on the Findings and Recommendation (Filing No. 33), issued by United States Magistrate Judge Thomas D. Thalken recommending that the Motion to Suppress filed by the Defendant Juan Alatorre ("Defendant") (Filing No. 20), be denied. Defendant filed Objections to the Findings and Recommendation (Filing No. 36) and a supporting brief (Filing No. 37) as allowed by 28 U.S.C. § 636(b)(1)(C) and NECrimR 59.2(a). The Government responded (Filing No. 38) to the Objections. For the reasons set forth below, the Findings and Recommendation will be adopted, and the Motion to Suppress will be denied.

## BACKGROUND

A Transcript of the evidentiary hearing on the Defendant's Motion (abbreviated in this Memorandum and Order as "Tr.") appears at Filing No. 32. Neither party objects to the Magistrate Judge's factual findings and the Court adopts those findings in their entirety. The Court provides the following summary of the facts based on its review of the evidence:

On November 26, 2014, members of the Metro Area Fugitive Task Force ("MAFTF") executed an arrest warrant for Defendant. (Tr. 54-55.) At 6:00 a.m. on the

day of the arrest, Omaha Police Officer Susan Rupp ("Officer Rupp") met with other members of the MAFTF to perform a briefing. (Tr. 55.) Roughly eight officers attended the briefing. (Tr. 55.) Officer Rupp explained to the other MAFTF officers that the arrest warrant for Defendant was for an assault with a weapon, and that Defendant had a prior weapons history. (Tr. 55.) Prior to November 26, 2014, Officer Rupp had performed some surveillance of Defendant's residence. (Tr. 56.) During Officer Rupp's prior surveillance, she did not see any other individuals that appeared to be living at the residence. (Tr 64.)

After the 6:00 a.m. briefing, the officers caravanned to Defendant's address. Officers arrived at Defendant's address at approximately 6:15 a.m. (Tr. 63.) Upon arrival, officers set up a perimeter around the residence. (Tr. 64.) Officer Rupp positioned herself behind Deputy U.S. Marshal John Huggins ("Deputy Huggins") and approached the front door. (Tr. 64.) Deputy Huggins knocked on the door and there was no answer. (Tr. 65.) After the first knock, U.S. Marshal Deputy Mark Anderson ("Deputy Anderson") heard some movement inside and an officer on the perimeter said over the radio that they heard movement as well. (Tr. 39.) Someone came to the front door briefly then retreated. (Tr. 7-8.) Shortly thereafter, Deputy Huggins knocked again, this time saying, "It's police" or "Police." (Tr. 65.)

Following the second knock and announcement, Defendant opened the door. (Tr. 65.) Defendant was brought out on the porch and asked if he was Juan Alatorre to which he answered, "Yes." (Tr. 65.) Deputy Huggins escorted Defendant out the front door and to Officer Rupp. (Tr. 57.) Another officer performed a pat down of Defendant and the officer asked if anyone else was inside. (Tr. 57.) Defendant said his girlfriend

2

was inside. (Tr. 57.) Officers called out to the girlfriend and she eventually came to the door. (Tr. 57.) The girlfriend was brought to the other side of the porch. (Tr. 57.) While on the porch, neither Defendant or his girlfriend offered any resistance to officers. (Tr. 51.)

Deputy Huggins testified that at the time of the arrest, he was concerned for officer safety because of the noise of movement, seeing movement through the blinds, and the hesitancy of the occupants to come out. (Tr. 13.) Officer Huggins believed that he had no way to be sure there was no one else inside except to check for himself. (Tr. 13.) Accordingly, Officer Huggins entered the residence to conduct a protective sweep to see if there was anyone else inside who could harm the arresting officers. (Tr. 14.) Deputy Anderson was directly behind Deputy Huggins during the sweep (Tr. 14) and Officer Rupp followed behind Deputy Anderson (Tr. 58). Deputies Huggins and Anderson cleared the rooms of the residence and checked wherever a person could hide but did not find anybody. (Tr. 14-15.) However, during the protective sweep, Deputies Huggins and Anderson noted two guns sitting on a shelf near the kitchen area and in front of the guns Deputy Huggins observed what he believed to be illegal drugs and drug paraphernalia. (Tr. 15, 43.) Finding no one inside, Deputies Huggins and Anderson left the residence and relayed what they saw inside to another officer. (Tr. 18-19.) The sweep lasted about two minutes and the officers checked only places in the residence where persons could be hiding. (Tr. 14-15, 72.)

Information about what was observed during the protective sweep was later placed in an Application and Affidavit For Issuance of a Search Warrant for the residence. (Hearing Exhibit 1; Tr. 60.) The items noticed during the protective sweep

3

along with other items were seized pursuant to the Search Warrant. (Hearing Exhibit 1; Tr. 60.)

Defendant was indicted on one count of being a felon in possession of a firearm. (Filing No. 1.) Defendant moves to suppress any evidence obtained during the warrantless search of Defendant's home, arguing that the protective sweep was unjustified and therefore the officers lacked probable cause to enter the residence without a warrant. (Filing No. 20.) After the evidentiary hearing, the Magistrate Judge concluded that the protective sweep by MAFTF officers was justified and that the contraband and illegal items were observed in plain sight during the protective sweep. (Filing No. 33 at 5.) Defendant objects to the Magistrate Judge's recommendation that his Motion to Suppress be denied. (Filing No. 36.) Defendant argues that the Magistrate Judge erred in concluding that the protective sweep was justified and that the subsequent search warrant was therefore unlawful. (*Id.*)

## STANDARD OF REVIEW

Under 28 U.S.C. § 636(b)(1)(C), the Court must make a de novo determination of those portions of the findings and recommendation to which the Defendants have objected. The Court may accept, reject, or modify, in whole or in part, the Magistrate Judge's findings or recommendation. The Court may also receive further evidence or remand the matter to the Magistrate Judge with instructions.

## DISCUSSION

Defendant argues that the protective sweep violated his rights because there were no articulable facts warranting a belief that anyone else was inside the residence. The Fourth Amendment guarantees the "right of the people to be secure in their

4

persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. Amend IV. "[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment-subject only to a few specifically established and well-delineated exceptions." *United States v. Davis*, 569 F .3d 813, 816 (8th Cir. 2009) (citing *Katz v. United States*, 389 U.S. 347, 357 (1967)). "The Fourth Amendment generally prohibits police from entering a home without a warrant unless the circumstances fit an established exception to the warrant requirement." *United States v. Varner*, 481 F.3d 569, 571 (8th Cir. 2007). "The government bears the burden of establishing that an exception to the warrant requirement applies." *United States v. Williams*, 616 F.3d 760, 765 (8th Cir. 2010).

As an exception to the warrant requirement, law enforcement may conduct a "protective sweep" of a residence under certain circumstances. "A 'protective sweep' is a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others. It is narrowly confined to a cursory visual inspection of those places in which a person might be hiding." *United States v. Anderson*, 688 F.3d 339, 346 (8th Cir. 2012) (quoting *Maryland v. Buie*, 494 U.S. 325, 327 (1990)). Law enforcement may conduct a protective sweep when officers have "articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." *Buie*, 494 U.S. at 327. In determining whether a protective sweep is justified, the Court "ignore[s] subjective considerations of law enforcement and instead objectively analyze the

5

exception to the warrant requirement, 'focusing on what a reasonable, experienced police officer would believe.'" *United States v. Pile*, -- F.3d --, No. 15-1882, 2016 WL 1398088, at *2 (8th Cir. Apr. 11, 2016) (quoting *United States v. Kuenstler,* 325 F.3d 1015, 1021 (8th Cir. 2003)).

MAFTF officers had a reasonable belief that someone dangerous may be in the residence at the time of the protective sweep. At the time MAFTF officers arrived at Defendant's residence, they had information that Defendant had a prior weapons history, and he was being arrested for assault with a dangerous weapon. Further, testimony at the evidentiary hearing established that The MAFTF officers heard movement in the residence and observed movement through the front door blind slats when they approached the front door and knocked. Officers testified that after hearing the movement, Defendant initially hesitated to answer the door and his girlfriend initially hesitated to exit the residence. Deputy Huggins noted that the occupants' hesitancy to answer the door was, in his experience, a cause for concern of officer safety. See *United States v. Crisolis-Gonzalez*, 742 F.3d 830, 836 (8th Cir. 2014), *as corrected* (Feb. 11, 2014) (holding that defendants' evasive and suspicious behavior and officers' belief that arrestee had firearms and illegal narcotics contributed to a reasonable possibility that other individuals were in the home, posing a danger to the officers). Based upon Deputy Huggins's concerns and the observations of other officers, Deputy Huggins and others conducted a sweep lasting no more than two minutes and limited to locations where a person might be hiding. The Court concludes that the evidence shows MAFTF officers had articulable facts to support a brief protective sweep of the residence. Accordingly, officers were justified in entering Defendant's residence and

the subsequent search warrant based on evidence in plain sight was not fruit of the poisonous tree.

**CONCLUSION**

For the reasons discussed, the Findings and Recommendation will be adopted and the Motion to Suppress will be denied.

IT IS ORDERED:

1. The Findings and Recommendation (Filing No. 33) are adopted;

2. The Motion to Suppress filed by the Defendant Juan Alatorre (Filing No. 20) is denied; and

3. The Defendant's Objection to the Findings and Recommendation (Filing No. 36) is overruled.

Dated this 26th day of May, 2016

                                            BY THE COURT:

                                            s/Laurie Smith Camp
                                            Chief United States District Judge